IN THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS, PEORIA DIVISION

| | |
|---|---|
| Stephanie Balensiefen, | ) |
| Plaintiff, | ) |
| v. | ) No. 10-CV-1263 |
| Princeton National Bancorp, Inc., d/b/a Citizens National Bank of Princeton, a National Banking Association, | ) |
| Defendant. | ) |

# REPORT AND RECOMMENDATION

BYRON G. CUDMORE, U.S. MAGISTRATE JUDGE:

Plaintiff pursues gender discrimination, retaliation, and whistleblower claims against Defendant, her former employer. Defendant has filed a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6), which, for the reasons below, the Court recommends be denied.

## Legal Standard

To state a claim under federal notice pleading standards, the Complaint must set forth a "short and plain statement of the claim showing that the pleader is entitled to relief . . . ." Fed. R. Civ. P. 8(a)(2). Factual allegations are accepted as true and must give "'fair notice of what the . . .

claim is and the grounds upon which it rests.'" EEOC v. Concentra Health Serv., Inc., 496 F.3d 773, 776-77 (7th Cir. 2007), *quoting* Bell Atlantic Corp. v. Twombly, 127 S.Ct. 1955, 1964 (2007)(other citation omitted). The "' . . . allegations, [must] show that it is plausible, rather than merely speculative, that [the plaintiff] is entitled to relief.'" Tamayo v. Blagojevich, 526 F.3d 1074, 1083 (7th Cir. 2008)(quoted and other citations omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. . . . Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Ashcroft v. Iqbal, 129 S.Ct. 1937, 1949-50 (2009), *citing* Twombly, 127 S.Ct. 1955. The application of the notice pleading standard is "'a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.'" Cooney v. Rossiter, 583 F.3d 967, 971 (7th Cir. 2009), *quoting* Iqbal, 129 S.Ct. at 1950.

## Allegations

The Court recounts only those allegations that are relevant to this Recommendation. Plaintiff makes many other allegations about sex discrimination and other misconduct by Defendant's employees that did not

involve Plaintiff. These were apparently included in the Complaint to demonstrate that the behavior by Plaintiff's supervisor was "part of an ongoing pattern and practice of sex discrimination" by Defendant. (Complaint, p. 6, Section C). However, it is not necessary to consider these allegations in the context of this Recommendation. The Court therefore sticks to summarizing the allegations that appear most relevant to Plaintiff's claims.

With that caveat in mind, Plaintiff alleges that she worked for Defendant as a mortgage loan originator in its facility located in Princeton, Illinois, beginning in 2005. She was allegedly a top producer, even amidst the nation's financial crisis. (Complaint ¶ 8). Joel Hambleton was Plaintiff's supervisor, but he worked at a different facility located in Spring Valley, Illinois. (Complaint ¶ 6). The Spring Valley facility processed the loans originated by Plaintiff.

As part of her job, Plaintiff attended mortgage banking meetings in which her supervisor, Joel Hambleton, and others were present. "[S]exual innuendo was [allegedly] a regular part of the Mortgage Banking meetings," and Hambleton allegedly participated in that sexual banter. (Complaint ¶ 11). The examples given in the Complaint are generally remarks by

female employees about themselves, but it is not necessary to go into that detail here. Id.

Hambleton allegedly "had a problem with women and treated women with disrespect and hostility that Hambleton did not exhibit to male employees." (Complaint ¶ 12). He also allegedly gave favorable treatment to female employees who "play[ed] up to him." (Complaint ¶ 15). For example, he allegedly approved more loans for female employees who told him he looked good or who rubbed his leg. (Complaint ¶ 15). In 2005, Plaintiff complained to Jim Miller about Hambleton's "abusive manner of yelling at her on the telephone . . . ." Miller allegedly told Hambleton to stop, which led to Hambleton telling Plaintiff that she could leave if she did not like it. (Complaint ¶ 12(F)). Hambleton allegedly backed off, however, when Plaintiff did not back down. Id.

In the Fall of 2008, Plaintiff allegedly discovered that Hambleton was not consistently complying with the requirements of the Truth in Lending Act, specifically, the disclosures required within three days of a loan application. (Complaint ¶ 33). She reported Hambleton's disclosure violations and his uneven treatment of loan applications to Defendant's Vice President of Risk Management. (Complaint ¶ 38). The Vice President

ultimately referred Plaintiff to Jill Smith, Human Resources Director, who told the Plaintiff in early 2009 that the problems were being corrected. (Complaint ¶ 40). Smith also instructed Plaintiff not to discuss the matter and to let Smith know of any retaliation. Id.

In March, 2009, Plaintiff was called to a meeting with Hambleton and James Miller, who worked in the commercial department. (Complaint ¶¶ 19, 41). At the meeting, Miller and Hambleton allegedly harassed Plaintiff and wrote up a list of deficiencies for her to remedy, despite her history stellar performance. (Complaint ¶ 41). Shortly after the meeting, Hambleton allegedly remarked to Plaintiff that he and Miller had thought she would quit after the write-up. Id. According to Plaintiff's response to the motion to dismiss, she reported the disclosure and lending violations to the Federal Deposit Insurance Company after it became clear that Defendant would not remedy the problem. (d/e 12, p. 7).

Plaintiff stayed on and allegedly continued her stellar performance. (Complaint ¶ 42). Hambleton then gave Plaintiff a poor evaluation in August 2009. The next month, Hambleton and Miller terminated Plaintiff for reasons that they knew were false, "as a pretext for retaliation against [Plaintiff] for her report of federal lending violations and refusal to

participate in those violations." (Complaint ¶ 44). Plaintiff "was the 10th female terminated or who left employment or transferred after males at [Defendant's] engaged in sexual discrimination as part of the pattern and practice of sex discrimination followed by the officer and directors of [Defendant] . . . ." (Complaint ¶ 45).

## Analysis

### I. Pattern and Practice Claim

Defendant first argues that Plaintiff cannot pursue a "pattern and practice claim" as an individual, citing Gilty v. Village of Oak Park, 919 F.2d 1247 (7th Cir. 1990). In Gilty, the Seventh Circuit remarked that pattern and practice evidence is "only of collateral importance" in an individual's discrimination claim. 919 F.2d at n. 7. That is, the focus in an individual discrimination claim is whether there was intentional discrimination against that particular individual: "evidence of a pattern and practice 'can only be collateral to evidence of specific discrimination against the actual plaintiff.'" 919 F.2d at 1252 (quoted cite omitted).

Although Plaintiff's Complaint repeatedly refers to a pattern and practice of discrimination, Plaintiff insists that she is "not pursuing a pattern and practice claim, which [Defendant] correctly notes can only be pursued

by the EEOC or an individual plaintiff asserting class action claims." (d/e 12, p. 4). Plaintiff contends that she included those allegations "to give notice of her intent to utilize such other incidents to prove her individual claims of sex discrimination and retaliation." Id. Examples of discrimination against others similarly situated may be relevant in an individual discrimination claim. *See* Van Antwerp v. City of Peoria, 627 F.3d 295, 298 (7th Cir. 2010)(circumstantial evidence of discrimination may include behavior toward other employees in protected group)(age discrimination case); Bell v. E.P.A., 232 F.3d 546 (7th Cir. 2000)("evidence of systemic disparate treatment is relevant to and probative of the issue of pretext even when it is insufficient to support a pattern and practice disparate treatment case").

In light of Plaintiff's judicial admission that she is not pursuing a "pattern and practice claim," the Court concludes that Defendant's request to dismiss the claim is moot. Whether Plaintiff will be able to use the other alleged incidents of sex discrimination to support her individual claims is not now before the Court.

## II. Illinois Whistleblower Act

Defendant next contends that Plaintiff fails to state a claim under the Illinois Whistleblower Act, 740 ILCS 174/1 et seq., by failing to allege that she disclosed the lending violations to a government or law enforcement agency. 740 ILCS 174/15(b) provides that "[a]n employer may not retaliate against an employee for disclosing information to a government or law enforcement agency, where the employee has reasonable cause to believe that the information discloses a violation of a State or federal law, rule, or regulation."

It is true that Plaintiff's Complaint alleges only that she reported the violations internally. (Complaint ¶¶ 37-40). However, Plaintiff adds allegations in her response, asserting that she did report the violations to "the Federal Deposit Insurance Corporation who in turn provided the information to the Comptroller of the Currency in April, 2009 when it became apparent" that her internal report would not fix the problem. (d/e 12, p. 7). Allegations may be added in response to a motion to dismiss, and they are properly considered by the Court if consistent with the Complaint. *See* County of McHenry v. Insurance Co. of the West, 438 F.3d 813, 820 (7th Cir. 2006)(Court of Appeals may consider new

factual allegations on appeal if consistent with Complaint and if they "flow naturally" from motion to dismiss). Defendant does not argue otherwise. Accordingly, Defendant's argument is moot because Plaintiff *does* allege that she reported the violations to a government agency.

Defendant also argues that Plaintiff fails to state a claim under the section of the Illinois Whistleblower act that prohibits retaliation for refusing to "participate in an activity that would result in a violation of a State or federal law, rule, or regulation, . . . ." 750 ILCS 174/20. The Court agrees that it is difficult to understand how the allegations fit into a claim under this section. Plaintiff admits that she had "no authority over the processing of the loans, which was done by the Loan Processing Department . . . under the supervision of Joel Hambleton." (Complaint ¶ 35). However, then she alleges that, as an officer of Defendant, she was "obligated to provide the Truth in Lending Act disclosures in originating the loan, and refused to participate in the systemic practice of not providing the required disclosures within three days of application for the loan . . . ." (Complaint ¶ 36). She alleges that "the only way . . . to cease participation in the systemic failure to provide . . . disclosures" was to inform a vice president who had the authority to fix the problem. Yet the problem continued

despite her reporting, and she continued to originate loans. (Complaint ¶¶ 40, 42).

It is hard to see how Plaintiff could "refuse to participate" in providing the loan disclosures if she had no power and played no part in providing those disclosures. Her claim seems to fit more squarely into a section 15(b) claim—retaliation for *reporting* a violation to a government agency. 740 ILCS 174/15(b).

On the other hand, Plaintiff seems to be asserting that, if she had not reported the violations, then she would have been a knowing "participant" in the violation, because she originated the loan and had a duty to ensure that the Truth in Lending Act was followed during the loan processing. Thus, she contends that her report to the vice president and FDIC amounted to a "refusal to participate" in the illegal activity.

On balance, the Court believes it would be premature to dismiss a possible claim under 740 ILCS 174/20. Plaintiff seems to contend that the only way for her to avoid participating in the disclosure violation was to reveal it. In the Court's opinion, this theory of relief deserves more factual development and legal briefing.

Defendant's cited case, Robinson v. Alter Barge Line, Inc., 513 F.3d 668, 670 (7th Cir. 2008) does not dictate otherwise.  Robinson involved a plaintiff who had reported illegal drug activity by other employees and was then fired.  The Seventh Circuit affirmed summary judgment on the section 20 whistleblower claim, in part reasoning that there was no evidence that the plaintiff had been fired for refusing to "participate" in illegal drug use.  513 F.3d at 670.  There was no evidence that he had even been invited to participate in any illegal drugs, much less that he had refused or was fired because of that refusal.  In contrast, here Plaintiff contends that she was automatically a participant in the violations by virtue of her position as a loan originator.  The only way for her to refuse the participate was allegedly to report those violations.  Thus, unlike Robinson, Plaintiff has alleged that she refused to participate in illegal activity, and that her refusal brought about retaliation by Defendant.  In any event, Robinson was decided on summary judgment, as was the other case cited by Defendant, Perez v. Bd of Educ. of City of Chicago, 2010 WL 3167295 * 8 (N.D. Ill. 2010).

### III.  Federal Rules 8(a) and 10(b)

Defendant argues that Plaintiff fails to identify separate counts, leaving it "guess[ing] as to Plaintiff's intentions in violation of Rule 8(a) and

10(b)." It is true that Plaintiff's complaint does not match specific factual allegations to her legal theories for relief. However, Defendant cites no requirement in the federal rules or in case law that factual allegations be matched to specific counts. See Hatmaker v.Memorial Medical Center, 619 F.3d 741, 743 (7th Cir. 2010)(Bell Atlantic and Iqbal "do not undermine the principle that plaintiffs in federal courts are not required to plead legal theories"). Federal Rule of Civil Procedure 10(b) does require a separate count for "each claim founded on a separate transaction or occurrence" "[i]f doing so would promote clarity," but here the Plaintiff grounds her claims on many of the same transactions and occurrences. (See Complaint ¶ 24). It may be that Plaintiff has included extraneous or irrelevant allegations in her Complaint, but that does not violate Rule 8 or 10(b).[1]

In the Court's opinion, the Complaint is clear enough as it stands. The Complaint states that Plaintiff is pursuing claims for sex discrimination and retaliation for reporting that discrimination under Title VII and the Illinois Human Rights Act. (Complaint para. 48(A)-(B)). She also pursues claims under the Illinois Whistleblowing Act based on alleged retaliation for

---

[1]Defendant has not moved to strike any allegations under Fed. R. Civ. P. 12(f).

her refusal to participate in lending violations, and, as explained in her response, for reporting those violations to a government agency. (Complaint ¶ 48(C); Plaintiff's Response, d/e 12, pp. 9-10). This gives sufficient notice of Plaintiff's claims and enables Defendant to file an Answer and begin defending itself, which is all that is required under the Federal Rules at this stage.

WHEREFORE, the Court RECOMMENDS that Defendant's Motion to Dismiss be denied (d/e 10).

Any objections to this Report and Recommendation must be filed in writing with the Clerk of the Court within fourteen days after service of an ECF copy of this Report and Recommendation. See 28 U.S.C. § 636(b)(1). Failure to timely object will constitute a waiver of objections on appeal. Video Views, Inc. v. Studio 21, Ltd., 797 F.2d 538, 539 (7th Cir. 1986). See also Local Rule 72.2.

ENTER: March 30, 2011

_____s/ Byron G. Cudmore_____
BYRON G. CUDMORE
UNITED STATES MAGISTRATE JUDGE